Access Cardio Systems Incorporated, et al. Madam Chief Justice, and may it please the Court, may I have reserved three minutes for rebuttal? You may. Thank you, Your Honor. This case turns on one sentence in a 22-page investment letter by which the defendant, Mr. Fink, the appellant here, stated that, I'm quoting, the access has been advised by its patent counsel that its product does not infringe any patents known to him. That's what the court found the representation to have been. From that, the court made two extrapolations that we respectfully submit are error. The first is that he deemed that to be a fraudulent statement because he, the court found below, that neither Pandisio or any other attorney had rendered a formal legal opinion related to the patent involved. I respectfully submit that. No, he found that there was no opinion, and therefore the question of whether it was a formal opinion was irrelevant. In his initial finding, Your Honor, he went on to say, as a, and I'm quoting the court again, as a sophisticated investor with knowledge of the patenting process and experience with handling the intellectual property claims, Fink knew, or at the very least should have known, that no such opinion had been formally given. The court in its initial finding was extrapolating that no opinion. Right. And then you brought this issue to the court's attention, didn't you, on reconsideration? We did, Your Honor. And the court at that point said, my finding is no opinion was given, so it doesn't much matter whether it was formal or not. The statement should not have been made. It was untrue when made. Well, I believe that Mr. Fink had testified that he did give an opinion, that he did say that there was an opinion about a particular patent. And every single one of the investors at the same damage hearing, after which the court altered its assessment of what had been said, each of the investors acknowledged that Fink had told them that the lawyer had said something, but not given a formal legal opinion. And Mr. Fink testified at the original trial, and there was no contrary evidence that, I thought the counsel testified, I thought there was evidence from the counsel that he never gave any opinion of any kind. Well, I believe it was muddy. I believe that what counsel testified to at the trial was that he was asked to review certain claims of a patent, and that he, a patent infringement. Before the letter, which was the offending letter from the court's position, which the investment plan, which was in October of 2002, accessed the company with the patent, and Fink, the appellant, had been given a claim letter from another attorney saying, you are infringing on our patents. And his lawyer had written back saying, give us the information because I don't see it. And Fink extrapolated from that, and by what his lawyer said in that communication, that there had been no infringement on any of the patents known to the lawyer. So is your argument, I understand the argument about no formal opinion, is this just an argument, even if we reject that, that there was a clear error on the factual finding? Yes, because there's no evidence other than that the lawyer said. So unless we think that factual finding was clearly erroneous, you lose on this point. Right. If it's the extrapolation, I respectfully submit that it is the de novo application of factual law. I'll turn to the other issue here, which is that the court also found at the damage hearing that there was a connection between this one sentence statement in the 22-page investment plan and $1.5 million of the investments. As is clear from the abundance with which the court denounced the testimony of the appellees after the damage hearing, his literally eight pages of footnotes describing how dishonest their expressions of their concern about how important this one sentence was to them, he rejected it out of hand with a description that really makes some indictments for perjury look good. He just really riddled them. And he then said, I'm not going to rely on what they said. I discredit what they said. In fact, what they said undermines their entire theory here and their entire testimony. I'm sorry. I had understood the issue to be one of whether reliance was required and that the bankruptcy judge found that because it was a state law violation, I think the blue laws, that reliance was simply not an element here. That's correct. Okay. You seem to be making a different argument than that. Yes, Your Honor. They offered testimony that they had focused on that particular statement and therefore all $20 million was owed them because all $20 million were connected to by means of the false statement, which is the standard for the false statement. It's not reliance, but there has to be some connection between the statement which was false and the investment. The way the court put it at page 24 of its decision is with respect to most of the investments, he said there was no evidence apart from the investor's self-serving statement that the business plan played any role in the solicitation of any of those additional investments. Okay. But then he says as to the $1.5 million from Zimmel, it's a different story. So you need to address that. Yes. And the different story is the court nor the opponents, and I invite the opponent when he comes up if he cares to address this, what is the difference between those $1.5 million and the other? The reason that I quote what the court said about the dishonesty of what they said is it went beyond just reliance because they argued vociferously below on their motion for summary judgment and then later at the damage hearing that reliance is irrelevant. So the court lumped Zimmel in with the others? Is that what you're saying? He did. He absolutely did. He discredited all of them. It's clear in the record. Then he said simply as a matter of temporal reality, the investments that came close in proximity in time to the 22-page plan, those are deemed to be by means of the false statement because they have some causal connection to it. Yet in the same breath, he said, I don't believe their testimony at all. And their testimony was it caused them, all of them, to make the investment. Suppose they had never testified at all. If they had never testified at all, then the court would simply have to say they have not met their burden. Except they would say they have with respect to the Zimmel part because of the close temporal proximity. Would that be error? Yes, it would. So then the testimony is sort of irrelevant, right? We could discredit all of it. He doesn't say I find the opposite. He says whatever you're saying, I don't believe you. So there's no evidence of reliance. So all we have is as if you never testified at all. And then we just look at is it enough to say if there's a temporal proximity to a misleading statement that we can say that it was by means of the misleading statement. And what's wrong with that holding as a legal matter? Because it doesn't rely on anything other than temporality. And what says that's not enough? What says that's not enough? Because the case law which is cited says there has to be a causal connection. Why is two months causally connected and four months is not? What else was in that 22-page opinion letter that could have induced them to do this? What they said is significant because they thought that's what was going to key it off for the judge to find it was all causally connected. Causal connection means something. It's not just arbitrarily snatched out of time. Were that so, could this court find a case or could it make the case that there is a time period after which you can't find it on temporality alone in a 22-page opinion where so much else was going on, which the court said was important and which I think the appellant indicated specifically, what the court indicated, that I think had been completely clear. Suppose I make a misleading statement on Monday and I get a big investment in response on Tuesday and that's all I've got on the record. I clearly could conclude that it was by means of the misleading statement on the basis of how close the investment came following the misleading statement, right? Your Honor, you could if it was one misleading statement and that was it. This was 22 pages of a full investment plan with 12 parts. There was nothing said by these defendants other than what they said. And is that because you don't view this as particularly significant? Assume the statement is misleading. It's not significant whether there's a representation that there's no patent infringement. It seems pretty significant. I guess my answer is this. If there are 22 pages of assertions on which investors are looking at and there's a two-month hiatus or a one-month hiatus, what's to say that the one statement that was made that was found to be inaccurate, that was a causal connection? There's nothing linking it to that except their testimony, which was discredited. And there's one more fact I would like to bring to the Court's attention. The Court found unreservedly that these investors had made these investments with their eyes wide open, fully apprised of the risk. That, it seems to me, undercuts simply relying on temporality for one statement out of 22 pages. And they have the burden of showing that the Zimmel investments were causally related or as the others weren't. One other fact that I pointed out below and was considered by the Court, although it wasn't addressed, but it was in the record, is that this statement about a legal opinion, what happened was after this money was given, they were the recipients of yet another patent suit. They went to ropes and graves to be their lawyers. That's a nightmare for a startup company. Patent litigation is frightfully expensive. We all know that. Yet nobody turned to think and said, where's that legal opinion that's going to save us from this voracious legal cost? So there's nothing that points to this being causally connected at all. And there is significant indications that it wasn't causally related, whatever that means. Thank you. Good morning, Your Honor. Barry Klickstein for the appellees. While Mr. Fink would like to excoriate the fellows that invested $20 million in his field project, I think Judge Gorton described this case more accurately as an interminable case exhaustively recounted by both the bankruptcy court and himself. In this case, Mr. Fink was found to have improperly taken the intellectual property from the company and was ordered to return it. In this case, Mr. Fink was found to have breached his fiduciary duty to the company, and at a time when the company was insolvent, repaid himself a quarter of a million dollars of money, he advanced from the investors' money while they continued to lose money. Can we go beyond the immorality or morality of the people involved and get to the legal issues, please? Certainly, Your Honor. Let me get directly to your point. In this case, the only point that my brother makes is that he believes that the finding by the bankruptcy judge and Judge Gorton were clearly erroneous. There is ample evidence in the record to support the fact that the bankruptcy court found, as a matter of fact, that Mr. Fink had made the statement. He found, as a matter of fact, that the statement was false. He disbelieved and stated that he disbelieved Mr. Fink's later testimony at the liability hearing, that, in fact, he had had a basis for the statement, and he then went into detail in his findings that he went on to talk about. The statement was false. It was material. The investors were investing in a company whose only asset was an intellectual property. That was the core of the company moving forward. He then did an analysis of the mass securities chapter, and he found that there is no requirement to show reliance. There is no requirement to show loss causation. And, in fact, that the by-means-of standard, looking at the Massachusetts cases and the analogous cases under the federal security law, the by-means-of only requires that there be some relationship between the misstatement or false statement and the advancing of the money. He went on to find that, with respect to the investors other than Mr. Zimmel, he didn't find that it was by-means-of for the reasons he expressed in his opinion. But, with respect to Mr. Zimmel, he found that Mr. Zimmel advanced $1.5 million upon receipt of the business plan that contained the material misrepresentation and within 30 days thereafter. He found specifically that the business plan, the October business plan, containing the misstatement, had a solicitous purpose, that the purpose of that business plan and the statement was to solicit money. He found, as a matter of fact, that the plan was distributed to Mr. Zimmel immediately before he advanced that $1.5 million. Now, the judge went on to find that later funds that Mr. Zimmel advanced, he did it with his eyes open and couldn't rely on this initial solicitation. And he found that these folks were sophisticated enough that their follow-on money was not protected. When you say immediate, what is that time period between the solicitation and the investment? The immediate time period, as the record shows, Your Honor, he received the business plan, and I don't remember whether it was a million first or 500 first. That came immediately afterwards and then within 30 days. Within 30 days is the time period? The whole million five had been advanced. And the first million is within, what, a week or even less than that? Yes. The record shows that. I wouldn't want to say within days, but the judge found it was in very close proximity. It wasn't months later. Months later, he advanced more money, and the judge didn't give him the protection of the statute. So clearly, the evidence, the facts, the law are all clear. As Judge Boroff in the bankruptcy court found, as Judge Gordon in the district court sitting as an appellate court found, the purpose of the statute was met by means of and the close proximity of this investment. Was Zimmel the latest first-time investor? Did anyone come in after him? No. No new investors came in after Mr. Zimmel, but all of the original investors doubled down on their bets as the company went on, Your Honor. Thank you. I believe the record says that the time period was a bit longer than a week. The first million was within a month, and the second 500,000 was within two months. They're close in time. There's no question about that. But the question is this. The court based its ruling on a case out of New York, which at page 16 of the brief says, quote, there must be some causal connection between the challenged communication and the payment. Temporality alone is not enough if it's their burden. What would be enough, in your view? Some showing. Of what, reliance? No, not of reliance. So what is the gap that you're trying to articulate? You don't have to show reliance. Temporality with intent to mislead is not enough. Yes. So what's the extra thing that you're looking for that would not be reliance? I actually don't know what the case is and what the court said exactly is the difference between reliance and some causal relationship. When my brother was up here, he said there has to be some relationship. Suppose it's the next day and two days later. If it were the next day or two days later, Your Honor, or perhaps even a month or two months later. Then temporality would work. Temporality would work if this statement was the only statement. But it's one in the middle of 22. And who's to say that there's anything that's causing that statement to prompt anything? They have the burden to show it. They went out of their way to try to show it a certain way, and the court rejected that. And it rejected it as a causal relationship, not as reliance, because they had told the court over and over again below, we don't have to show reliance, so therefore we're entitled to summary judgment. They then show up at a hearing when summary judgment is denied, and they say this is why it cost us two, and he rejected that. What is the bright line? Is it that the temporality is you know it when you see it? This is a terribly muddled area of the law. This New York case that you refer to, this isn't under the Massachusetts blue sky laws, right? Well, it's cited in the court as the basis for its causal connection. My question is whether the New York case is analyzing the New York blue sky laws or the Massachusetts law. Your Honor, I believe that it was analyzing the Massachusetts law, and right after it. Okay. And is it a case between private parties, or is it an enforcement action? It's between private parties. Right after it. I probably should have cited the next case, which is Miriam, which is the Merrim case, at page 16, 809, Northeast 2nd, 1030, quoting Jackson. So there was a state case in Massachusetts quoting the Jackson case and making that the Massachusetts law, which obviously we're bound by Massachusetts law here in the Massachusetts blue sky. And all I want to say in conclusion is that given the amount of statements that were made, most of which were accurate. Thank you. We get the point. Thank you.